**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ROBERT PAUL BLALOCK, JR., CDCR #F85368,
Plaintiff,

vs.

ANDRE GREEN, Warden, et al.,
Defendants.

Case No.: 26-CV-3567 JLS (MSB)

**ORDER (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS; AND (2) DISMISSING CERTAIN CLAIMS WITH LEAVE TO AMEND**

(ECF Nos. 1, 2)

Plaintiff Robert P. Blalock, Jr. ("Blalock" or "Plaintiff"), a prisoner proceeding *pro se,* has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis* ("IFP"). ECF Nos. 1, 2. Blalock raises three causes of action related to conduct attributed to staff of Centinela State Prison ("CEN"), where Blalock is incarcerated pursuant to a criminal conviction. *See* ECF No. 1 at 4–6. For the reasons discussed below, the Court **GRANTS** Blalock's motion to proceed IFP. After screening the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court finds that certain claims survive screening, **DISMISSES** the remaining claims as specified below, and **GRANTS** leave to amend where appropriate.

/ / /

/ / /

## MOTION TO PROCEED IFP

### I. Legal Standard

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for a writ of habeas corpus, must pay a filing fee of $405.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants Blalock leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). To proceed IFP, prisoners must tender "an affidavit that includes a statement of all assets" the prisoner possesses, as well as a "certified copy of the" prisoner's "trust fund account statement (or institutional equivalent) for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(1), (2). Using this financial information, the court assesses an initial partial filing fee which is

> calculated based on "the average monthly deposits to the prisoner's account" or "the average monthly balance in the prisoner's account" over a 6-month term; the remainder of the fee is to be paid in "monthly payments of 20 percent of the preceding month's income credited to the prisoner's account."

*Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)–(2)). In short, while prisoners may qualify to proceed IFP without having to pay the full statutory filing fee upfront, they remain obligated to pay the full amount due in monthly payments. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1)–(2).

### II. Analysis

In support of his IFP Motion, Blalock has provided a copy of his prison certificate, which reflects an average monthly balance of $242.83, average monthly deposits of $304.78, and an available account balance of $0.24. ECF No. 3 at 4. Blalock indicates he earns $13.00 per month from his job in the prison and receives $300.00 per month from

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a); Judicial Conference of the United States, District Court Miscellaneous Fee Schedule ¶ 14 (eff. Dec. 1, 2023). The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

his wife, which he spends on "food and hygiene" products. ECF No. 2 at 2. Accordingly, the Court **GRANTS** Blalock's IFP motion and imposes an initial partial filing fee of $60.96. The California Department of Corrections and Rehabilitation ("CDCR") must collect the initial filing fee and thereafter collect the remainder of the fee balance in installments.

**SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)**

## I. Legal Standard

Because Blalock is a prisoner proceeding IFP, 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) require the Court to screen his complaint and *sua sponte* dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citation omitted).

Federal Rule of Civil Procedure 8 describes "the information that a plaintiff must provide about the merits of his claim at the outset of litigation." *Berk v. Choy*, 607 U.S. 187, 196 (2026). Thus, Rules 8 and 12(b)(6) together require a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id*. The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.* at 679.

While a plaintiff's allegations are taken as true, courts "are 'not required to indulge unwarranted inferences.'" *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as

true. *Iqbal*, 556 U.S. at 678. However, pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

**II. Plaintiff's Allegations**

Blalock's Complaint names eight defendants, all current or former CEN employees: Warden Andre Green, Community Resource Manager Ken Phillips, Retired Warden Fedencio N. Guzman, Assistant Warden Lainardo Black, Release and Receiving ("R&R") Sergeant K. Solario, R&R Correctional Officer Varges, B Yard Captain "John Doe," and Catholic Chaplain Gappinger. ECF No. 1 at 1–3. Blalock alleges that Defendants committed a series of constitutional violations against him.

Blalock's first cause of action asserts that his First and Fourteenth Amendment rights were violated when, on October 15, 2025, Defendant Varges and two other R&R staff members searched and confiscated what he describes as "sacred spiritual items," which he lists as a "red bandana" and "religious head gear." *Id.* at 4. Blalock alleges that he "explained to [Varges and others] that [he] would spread everything out so they could visually inspect it." *Id.* But "they didn't care what [Blalock] told them": "they were searching [his] sacred spiritual items." *Id.*

Blalock's second cause of action also asserts First and Fourteenth Amendment violations. *Id.* at 5. In his second cause of action, Blalock alleges that Phillips, CEN's Community Resource Manager, failed to satisfy a request to obtain firewood for Blalock and others. *Id.* Blalock further alleges that Phillips "has Chaplain Gappinger barring [Blalock and others] from visiting [their] big ceremonial drum that's in the [prison] chap[el]." *Id.* Blalock includes a photograph of himself and six other men behind a large ceremonial drum. ECF No. 1-2 at 53. In this cause of action, Blalock also alleges violations of Cal. Const. art. I, § 31 and the CDCR Department Operations Manual ("DOM"). ECF No. 1 at 5.

Blalock's third cause of action is for First Amendment retaliation. ECF No. 1 at 6. The Complaint points to an exhibit containing a grievance stating that on January 4, 2026,

"the Native American population of B-yard [was] denied access to sweat lodge grounds/were not ducated, even though programs were running."[2] ECF No. 1-4 at 3. Blalock states Defendant "Phillips and his cohorts" were responsible for taking Blalock "off the list" of sweat lodge participants for his filing of grievances for the alleged desecration of his spiritual items "and multiple . . . sweat lodge issues."[3] *Id.* Blalock also alleges that this conduct violated Title VI of the Civil Rights Act of 1964 and asserts that his exhibits will show violations of Cal. Code Regs. tit. 15, §§ 3022 and 3230. *Id.*

Of the eight Defendants listed on pages 2 and 3 of the Complaint, Blalock's causes of action do not mention by name Defendants Green, Guzman, Black, Solario, or Doe. ECF No. 1 at 4–6. The Complaint identifies Green, Phillips, Guzman, Solario, and Varges as defendants in both their individual and official capacities, and Doe and Gappinger as defendants only in their official capacities. *Id.* at 2–3. It does not specify the capacity in which Black is sued. Blalock seeks injunctive relief requiring prison officials to: (1) train staff concerning searches of Native American religious items; (2) establish a Native American position on the prison's inmate advisory council; and (3) require the Community Resource Manager to comply with Article 38 of the CDCR DOM § 53120.4. ECF No. 1 at 8. He also seeks $700.00 in compensatory damages "for spiritual items" and "$18 billion for denial [of] access to [the] sweat lodge." *Id.*

**III. Discussion**

As explained below, Blalock's First Amendment claims concerning confiscation of religious items and access to the ceremonial drum, his Religious Land Use and Institutionalized Persons Act ("RLUIPA") claim concerning the ceremonial drum, and his First Amendment retaliation claim against Phillips survive screening to the extent specified in this Order. His remaining allegations fail to state a plausible claim for relief and must

---

[2] "A 'ducat' is a pass issued by prison authorities that allows an inmate to leave his assigned housing unit to go to a specific location within the prison." *Wilson v. Inst. Fac. Dental Dep't*, No. 3:25-CV-2839-JES-JAC, 2026 WL 3168516, at *2 (S.D. Cal. Oct. 22, 2026) (citations omitted).

[3] Plaintiff's handwritten Complaint lists both "sweat lodge" as two words and "sweatlodge" as a single word. For ease of reference, the Court will use the two-word form.

be dismissed, but with leave to amend where indicated. Blalock may either proceed on the surviving claims or file an amended complaint addressing the identified deficiencies.

### *A. Personal Participation and Supervisory Liability*

As mentioned above, Defendants Green, Guzman, Black, Solario, and Doe are not referenced in the individual causes of action. ECF No. 1 at 4–6. To state a claim under § 1983, Blalock must allege the deprivation of a federal right by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Each defendant must be connected to the alleged deprivation through that defendant's own conduct. A supervisory title, standing alone, does not establish liability. *See Iqbal*, 556 U.S. at 676; *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1085 (9th Cir. 2013).

Here, the Complaint's factual allegations identify conduct by Varges, Phillips, and Gappinger. They do not explain what Green, Guzman, Black, Solario, or the unidentified B Yard Captain personally did or failed to do or how that violated Blalock's rights. The Court cannot infer participation merely because these individuals held supervisory positions or worked in a department associated with the alleged events. *See Lemire*, 726 F.3d at 1085; *see also Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018). In particular, the allegation that two unidentified employees accompanied Varges does not establish that either employee was Solario or the unidentified Captain.

Accordingly, the claims against Green, Guzman, Black, Solario, and Doe, the unidentified Captain, are dismissed with leave to amend. An amended complaint must identify each defendant's own relevant conduct. For prospective official-capacity relief, Blalock must also identify a defendant with a sufficient connection to the challenged practice and authority to implement appropriate relief. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

### *B. First Amendment Free Exercise Claims*

Blalock's first two causes of action allege interference with his religious exercise. Some, but not all, of those allegations are sufficient to survive screening. An incarcerated person who asserts "a Free Exercise claim must first show that he or she has a sincerely

held religious belief that was impinged by government action." *Fuqua v. Raak*, 120 F.4th 1346, 1352 (9th Cir. 2024); *see also Shakur v. Schriro*, 514 F.3d 878, 883–85 (9th Cir. 2008). However, prisoners' First Amendment rights are subject to limitations "aris[ing] both from the fact of incarceration and from valid penological objectives." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). If a prisoner makes the requisite showing of interference with a sincerely held religious belief, the "burden shifts to the [defendant] to show that the regulation is reasonably related to legitimate penological interests." *Jones v. Slade*, 23 F.4th 1124, 1144 (9th Cir. 2022) (citation omitted).

*1. Confiscation of Spiritual Items*

Liberally construed, Blalock alleges more than disagreement with the manner of an inspection. He alleges that Varges confiscated items Blalock used for religious purposes, including religious headgear, despite Blalock's explanation that the items were sacred. ECF No. 1 at 4. These allegations permit a reasonable inference, at this preliminary stage, that the confiscation interfered with Blalock's sincerely held religious exercise. *See, e.g.*, *Wares v. Simmons*, 392 F.3d 1141, 1144 (10th Cir. 2004) (confiscation of plaintiff's Jewish religious texts "compelled [plaintiff] to practice a stunted version of his religion that is an inadequate alternative to the full implementation of his sincerely held religious beliefs"); *Kay v. Bemis*, 500 F.3d 1214, 1220 (10th Cir. 2007) ("district court erred in requiring Kay's pleading to indicate that the use of tarot cards and other items were 'necessary' to the practice of his [Wicca] religion").

Accordingly, Blalock's First Amendment claim against Varges concerning confiscation of the identified religious items survives screening.

*2. Access to Ceremonial Drum*

Blalock alleges that Phillips directed Gappinger to prevent him and others from accessing a large ceremonial drum in the prison chapel. ECF No. 1 at 5. Read in the context of Blalock's Native American religious practices, the allegation plausibly describes an ongoing substantial burden on religious exercise rather than the denial of an ordinary recreational activity. *See Shakur*, 514 F.3d at 884–85; *Kay*, 500 F.3d at 1220.

For screening purposes, Blalock sufficiently connects Phillips to the restriction by alleging that Phillips directed it, and to Gappinger by alleging that Gappinger implemented it. Blalock's First Amendment claim concerning ceremonial-drum access therefore survives against Phillips in his individual capacity and against Phillips and Gappinger in their official capacities for prospective relief.

*3. Request for Firewood*

The firewood allegation is insufficient as pleaded. Blalock alleges that he asked Phillips to obtain firewood, and Phillips fails to fulfill the request. *See* ECF No. at 5. That allegations does not adequately explain Phillips' response, the religious exercise for which the wood was needed, or how Phillips' conduct prevented or substantially interfered with that exercise. *See id.* The Court will not assume that an unanswered or unfulfilled request, without further factual context, establishes a constitutional violation. *See Gibson*, 165 F.4th at 1287; *Iqbal*, 556 U.S. at 678. This portion of the free exercise claim is dismissed with leave to amend.

*4. Sweat Lodge Access*

Lastly, the Complaint identifies denial of sweat lodge access. ECF No. 1-4 at 3. If Blalock intends to plead a free exercise claim independent of retaliation, he must describe the resulting interference with his own religious exercise. The reference to Phillips and his "cohorts" removing Blalock from the sweat lodge lists does not adequately describe the impact on Blalock's religious exercise. *Cf. Wares*, 392 F.3d at 1144 (noting plaintiff's claim that his "religion books" are "required for daily use"); *Morse v. Mallernee*, No. 9:13-CV-1354-LEK/DEP, 2015 U.S. Dist. LEXIS 133646, at *11 (N.D.N.Y. Aug. 17, 2015) (sufficiently pleaded Free Exercise claim where, in part, "plaintiff allege[d] that (1) he is Roman Catholic, [and] (2) he prayed twice daily with the crucifix that defendants confiscated"); *see Iqbal*, 556 U.S. at 678 (explaining that labels, conclusions, and naked assertions without further factual enhancement do not suffice). This aspect of the free exercise claim is dismissed with leave to amend.

/ / /

### *C. RLUIPA Claims*

Although Blalock identifies constitutional claims, his allegations concerning religious practices and his request for injunctive relief also warrant consideration under the RLUIPA, 42 U.S.C. § 2000cc-1. *See Alvarez v. Hill*, 518 F.3d 1152, 1155, 1157–58 (9th Cir. 2008) (considering application of RLUIPA to Native American prisoner's free exercise claims involving his right to "participate and practice" a sweat lodge and sacred pipe ceremony despite his failure to "cite the statute"). "Section 3(a) of RLUIPA also protects the religious rights of inmates." *Fuqua*, 120 F.4th at 1353. That law prohibits the government from "impos[ing] a substantial burden on the religious exercise of a person residing in or confined to" a prison, "unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).

Liberally construed, the alleged ongoing exclusion from a ceremonial religious drum sufficiently pleads a substantial burden for initial screening. *See Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (defining substantial burden in RLUIPA context). The Court therefore permits Blalock's claim for prospective relief concerning drum access to proceed under RLUIPA against Phillips and Gappinger in their official capacities. *Landor v. La. Dep't of Corr. & Pub. Safety*, 609 U.S. 59, 69–70 (2026) (rejecting prisoner's RLUIPA claims against individual state employees in their personal capacities absent allegations that any of them "entered any agreement with the federal government . . . [or] voluntarily and knowingly consented to answer private suits under RLUIPA").

The remaining allegations do not sufficiently identify an ongoing burden and an appropriate official-capacity defendant capable of remedying it. Those aspects of any RLUIPA claim are dismissed with leave to amend. RLUIPA does not provide the damages Blalock seeks against state officials in either their official or individual capacities. *See Sossamon v. Texas*, 563 U.S. 277, 285–93 (2011); *Wood v. Yordy*, 753 F.3d 899, 902–04 (9th Cir. 2014). Any RLUIPA damages claim is thus dismissed without leave to amend.

That limitation does not dispose of otherwise viable individual-capacity damages claims under § 1983.

### *D. First Amendment Retaliation*

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison*, 668 F.3d at 1114 (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). In the prison context, a First Amendment retaliation claim has five basic elements:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted). Liberally construed, Blalock's First Amendment retaliation allegations are sufficient to survive the "low threshold" set for *sua sponte* screening. *See Watison,* 668 F.3d at 1112; *Wilhelm v. Rotman*, 680 F.3d 1113, 1121, 1123 (9th Cir. 2012). Filing prison grievances is protected activity, and exclusion from religious programming may constitute adverse action. While Blalock is not specific about the chronology, he claims to have been receiving sweat lodge participation privileges at CEN since October 2025. ECF No. 1 at 6. He further expressly alleges that Defendant Phillips took him off the participation list in response to his filing grievances. *Id.* *See Watison*, 668 F.3d at 1114 ("The filing of an inmate grievance is protected conduct."); *see also Sorranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) ("[A] plaintiff alleging retaliation for the exercise of constitutionally protected rights must initially show that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision.") (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977))).

While it is unclear how long he was denied access, Blalock at least alleges that Phillips' actions resulted in his exclusion from the sweat lodge ceremony on January 4, 2026. ECF No. 1-4 at 3. Liberally construed, the alleged removal from religious programming in response to Blalock's grievances describes adverse action that could chill

a person of ordinary firmness from filing future grievances. *See Brodheim*, 584 F.3d at 1271 (holding that a plaintiff need not allege that he actually stopped filing grievances). Finally, Blalock's factual assertions do not suggest that exclusion from the sweat lodge reasonably advanced any legitimate correctional goal. *Rhodes,* 408 F.3d at 567–68. Thus, liberally construed, Blalock's allegations against Phillips are sufficient to permit the retaliation claim against him in his individual capacity to proceed past screening. *See Wilhelm*, 680 F.3d at 1123.

### ***E. Fourteenth Amendment***

#### *1. Due Process*

Blalock may be alleging that confiscation of his religious items deprived him of property without due process, but the claim is not adequately pleaded. ECF No. 1 at 4. Any challenge to "a negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). California's post-deprivation remedy procedures have been found adequate by the Ninth Circuit. *Id.* at 816–17 (citing Cal. Gov't Code §§ 810–895).

Thus, Blalock would have to allege that the taking of his items occurred in a situation in which "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (collecting cases). Blalock would have to show that his items were confiscated not due to the rogue actions of an individual employee but due to an "established state procedure," *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982), that lacked constitutionally adequate "predeprivation procedural safeguards," *Zinermon*, 494 U.S. at 129.

As pleaded, Blalock appears to assert that R&R staff took his religious items in violation of applicable law. *See* ECF No. 1 at 4. Such a taking would therefore require only adequate post-deprivation remedies as the allegation challenges the actions of prison employees, *not* their procedure. *See Hudson*, 468 U.S. at 533 ("The state can no more

anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct.”).

Since California has adequate post-deprivation procedures, any post-deprivation due process challenge fails. The Court therefore dismisses Blalock’s due process challenge. But given the lack of factual development in the Complaint, along with Blalock’s status as a self-represented prisoner, the Court grants Blalock leave to amend to allege a deprivation pursuant to an established procedure that lacked constitutionally adequate safeguards. *See, e.g.*, *Langford v. Daniels*, No. 3:22-cv-482-MMD-CSD, 2023 WL 2877590, at *5–6 (D. Nev. Mar. 3, 2023) (allowing due process claim for deprivation of federal economic relief funds to proceed past preliminary screening, noting that an “authorized deprivation is one carried out under established state procedures, regulations, or statutes”).

*2. Equal Protection*

If Blalock intends to present an equal protection claim, that claim is dismissed as undeveloped. *Iqbal,* 556 U.S. at 678 (complaint insufficient where “supported by mere conclusory statements” (citation omitted)). “To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class.” *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003).

While Blalock’s allegations concern Native American religious practices, Blalock does not develop allegations that any particular defendant acted because of Blalock’s religion or other protected status or treated materially comparable religious groups differently. The text of Blalock’s Complaint does not make any such allegations. *See* ECF No. 1 at 4–6. And review of the attachments shows only that Blalock asserted that the “Native American population of B-yard were denied access to sweat lodge grounds/were not ducated, even though programs were running.” ECF No. 1-4 at 3. Such a claim does not seek to establish that comparable religious services were available to other prisoners or that the distinction resulted from intentional discrimination. *See, e.g.*, *Gallegos v. Spencer*, No. 1:26-CV-05351-BAM-PC, 2026 WL 3257849, at *5 (E.D. Cal. Oct. 29, 2026)

(dismissing equal protection claim where plaintiff, who was denied access to Wiccan religious services, presented "conclusory allegation that other religious groups were permitted to gather for religious expression" and failed "to allege that these groups were similarly situated").

Therefore, to the extent Blalock seeks to plead an equal protection violation related to his religious practice, his claims are dismissed with leave to amend.

### ***F. Other State and Federal Claims***

Blalock seeks relief based on alleged violations of numerous state and federal provisions. ECF No. 1 at 5–6.

#### *1. State Constitutional and Regulatory Claims*

Blalock alleges several violations of California law, including Cal. Const. art. I, § 31, sections of the California Code of Regulations, and the CDCR DOM. ECF No. 1 at 6. A § 1983 claim may not be based on violations of a state law or regulation. *See Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007); *see also Save Our Valley v. Sound Transit*, 335 F.3d 932, 939 (9th Cir. 2003). Accordingly, to the extent Blalock seeks relief under § 1983 solely for violations of the California Constitution, state regulations, or the DOM, those theories are dismissed without leave to amend.

#### *2. Federal Statutory Claims*

Blalock also alleges violations of Title VI of the Civil Rights Act of 1964. ECF No. 1 at 6. Those cannot proceed either. Blalock's passing reference to Title VI does not state a plausible claim upon which relief can be granted. *See Iqbal*, 556 U.S. at 678. "Title VI prohibits discrimination on the basis of race, color, or national origin in 'any program or activity receiving Federal financial assistance.'" *Am. Ass'n of Univ. Professors v. Trump*, 815 F. Supp. 3d 907, 963 (N.D. Cal. 2025), *appeal dismissed,* No. 26-263, 2026 WL 1049175 (9th Cir. Feb. 11, 2026) (quoting 42 U.S.C. § 2000d).

To plead a Title VI cause of action, Blalock would have to show "(1) there is intentional discrimination on a prohibited basis and that (2) the entity engaged in the intentional discrimination is receiving federal financial assistance." *Saif'ullah v. Cal. Sup.*

*Ct.*, No. 23-CV-02264-CRB-PR, 2023 WL 5279640, at *1 (N.D. Cal. Aug. 16, 2023). Title VI prohibitions against discrimination are coextensive with those of the Equal Protection Clause. *See Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 287 (1978) (opinion of Powell, J.) ("Title VI must be held to proscribe only those racial classifications that would violate the Equal Protection Clause . . . .").

As discussed in the equal protection claim analysis, Blalock has not alleged facts linking his exclusion to intentional discrimination by Defendants. Nor has Blalock asserted that he is suing an entity that "is receiving federal financial assistance." *Saif'ullah*, 2023 WL 5279640, at *1. As such, Blalock fails to state a claim under Title VI. Accordingly, any potential Title VI claim is dismissed with leave to amend.

**IV. Leave to Amend**

Because additional factual allegations may cure some of the deficiencies identified above, Blalock is granted leave to amend. If Blalock files an amended complaint, he should:

1. Identify each defendant and describe that person's own conduct.

2. Explain how the challenged acts interfered with Blalock's religious exercise, including the duration and practical effect of any deprivation.

3. State facts supporting any claim of a due process violation or intentional discrimination.

4. State facts supporting any claim under Title VI.

An amended complaint must be complete in itself, without relying on the original Complaint to supply necessary allegations. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."). In other words, the amended complaint must include every surviving claim and every claim dismissed with leave to amend that Blalock wishes to pursue. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (noting that claims dismissed with leave to amend that are not re-alleged in an amended pleading may be "considered waived if not repled").

Alternatively, Blalock may elect to proceed on the claims that survive screening without amending the dismissed claims. Within forty-five (45) days of the date of this Order, Blalock must either file a First Amended Complaint or file a notice stating that he elects to proceed on the surviving claims identified in Section IV, paragraph 4, below. If Blalock elects to proceed on the surviving claims, the dismissed claims will remain dismissed, and the Court will issue a separate order directing service by the U.S. Marshal on Defendants Varges, Phillips, and Gappinger, as appropriate, pursuant to 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3). If Blalock files a First Amended Complaint, the Court will screen that pleading to determine whether service upon any Defendant is warranted. If Blalock neither files a First Amended Complaint nor submits a notice electing to proceed on the surviving claims within forty-five (45) days, the Court may dismiss this action for failure to prosecute and failure to comply with this Order.

**CONCLUSION**

Accordingly, for the reasons explained, the Court:

1. **GRANTS** Blalock's Motion to Proceed IFP. ECF No. 2.

2. **DIRECTS** the Secretary of the CDCR, or the Secretary's designee, to collect from Blalock's trust account, when funds exist, the initial partial filing fee of $60.96 and thereafter to collect and forward monthly payments to the Clerk of Court toward the remaining balance of the $350 statutory filing fee in accordance with 28 U.S.C. § 1915(b)(2).

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California 94283-0001, via U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4. **FINDS** that the following claims survive initial screening: (a) Blalock's First Amendment free exercise claim against Varges in his individual capacity arising from confiscation of religious items; (b) Blalock's First Amendment free exercise claim against Phillips in his individual capacity concerning access to the ceremonial drum; (c) Blalock's First Amendment claims for prospective relief against Phillips and Gappinger in their

official capacities concerning the alleged ongoing restriction on ceremonial-drum access; (d) Blalock's RLUIPA claim for prospective relief against Phillips and Gappinger in their official capacities concerning that same restriction; and (e) Blalock's First Amendment retaliation claim against Phillips in his individual capacity.

5. **DISMISSES** without leave to amend: (a) Blalock's claims for monetary damages under § 1983 against Defendants in their official capacities; (b) his claims for monetary damages under RLUIPA; and (c) his request for relief under § 1983 based solely on violations of the California Constitution, state regulations, or the CDCR DOM.

6. Except for the claims dismissed without leave to amend in paragraph 5, **DISMISSES** all other claims, and the claims against Green, Guzman, Black, Solario, and Doe, the unidentified B Yard Captain, with leave to amend, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

7. **GRANTS** Blalock forty-five (45) days from the date of this Order to take either of the following steps: (a) file a First Amended Complaint that cures the pleading deficiencies noted in this Order[4]; or (b) file a notice stating that he elects to proceed on the original Complaint's surviving claims. Blalock's Amended Complaint must be clearly titled as his First Amended Complaint, contain Civil Case No. 26-cv-03567-JLS-MSB in its caption, and be complete without reference to his original Complaint.

/ / /

/ / /

/ / /

[4] Plaintiff identifies the B Yard Captain as John Doe. Although the use of Doe defendants is disfavored, it is not categorically prohibited. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If an amended complaint states a claim against an unidentified defendant, Plaintiff may seek appropriate discovery to identify that defendant unless discovery would not uncover the defendant's identity or the claim is subject to dismissal on another ground. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999). Once the defendant is identified, Plaintiff must seek leave to substitute the defendant's true name, as appropriate, and provide sufficient identifying information to permit service. Because Plaintiff is proceeding IFP, the Court will direct service in accordance with 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3).

If Blalock neither files a First Amended Complaint nor files a notice electing to proceed on the surviving claims within forty-five (45) days of this Order, the Court may dismiss this action for failure to prosecute and failure to comply with this Order.

**IT IS SO ORDERED.**

Dated: November 12, 2026

Janis L. Sammartino

Hon. Janis L. Sammartino
United States District Judge